IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LAURIE DAVENPORT,                    :

    Plaintiffs,                     :

v.                                   :      Civil Action No. GLR-13-1249

STATE OF MARYLAND, et al.,           :

    Defendants.                     :

**<u>MEMORANDUM OPINION</u>**

This employment discrimination action is before the Court on Defendants State of Maryland ("State"), Sergeant Bruce Sutton, Captain Robert MacKenzie, Margaret Chippendale, and William Filbert's Motion to Dismiss Plaintiff Laurie Davenport's Amended Complaint. (ECF No. 37). Also before the Court is Defendant William Blackiston's Motion to Dismiss[1] Amended Complaint. (ECF No. 38).[2] Davenport, a former employee of the Maryland Department of Public Safety and Correctional Services ("DPSCS"), alleges the State committed numerous unlawful employment practices in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e <u>et seq.</u> (2012) and Maryland's Fair Employment Practices Act

---

[1] Blackiston does not make any original arguments in his Motion to Dismiss, but rather joins and incorporates by reference all legal arguments in the State's Motion to Dismiss. (<u>See</u> Def. Blackiston's Mot. to Dismiss at 1, ECF No. 38). Therefore, the Court will address both Motions to Dismiss as one motion.

[2] Defendant Michael Hancock has not filed a Motion to Dismiss.

("FEPA"), as amended, Md. Code. Ann., State Gov't §§ 20-601 <u>et</u> <u>seq.</u> (West 2014). She also alleges Defendants violated 42 U.S.C. § 1985(3) (2012)[3] by conspiring to deprive her of equal protection of the law and committed numerous torts.

The Court, having reviewed the pleadings and supporting documents, finds no hearing necessary. <u>See</u> Local Rule 105.6 (D.Md. 2014). For the reasons outlined below, the Court will grant in part and deny in part Defendants' Motion.

## I.   BACKGROUND[4]

On or about June 30, 2006, Davenport began working for the DPSCS as a corrections officer at the Eastern Pre-Release Unit ("EPRU") in Church Hill, Maryland. EPRU is a "pre-release" facility that houses inmates who are in the last three years of their sentences.

Blackiston was the facility administrator at EPRU and he served as Davenport's second-line supervisor. Hancock and Sutton were corrections officers at EPRU and they served as Davenport's direct supervisors. Blackiston directly supervised Sutton, Hancock, and MacKenzie. Chippendale served as Assistant Warden and Filbert served as Warden.

---

[3] Davenport mislabels her Section 1985 claim as a Section 1983 claim.

[4] Unless otherwise noted, the following facts are taken from the Amended Complaint and are accepted as true for the purposes of Defendants' Motion.

Davenport interacted with Blackiston, Hancock, and Sutton on a daily basis.  Hancock and Sutton would give Davenport daily orders regarding her duties and responsibilities.  Although her duties varied, she frequently performed searches of inmates and their lockers, cleaned the facility, and transported inmates to other facilities.

Davenport alleges Blackiston, Sutton, and Hancock made demeaning, threatening, and sexually suggestive comments to her during her employment at EPRU.  She further alleges Hancock pulled her hair on several occasions while making sexually suggestive comments.

Exasperated by the conduct of Blackiston, Sutton, and Hancock, Davenport submitted a request to MacKenzie to work as part of the Road Crew.[5]  This assignment would require minimum interaction with Blackiston, Sutton, and Hancock.  MacKenzie, however, denied this request and instead gave the position to a male officer who had less years of experience at the facility than Davenport.

At some point during her employment at EPRU, Davenport applied for a promotion to the rank of sergeant.[6]  When she advised Blackiston of her intent to apply, he told her, "don't

---

[5] Davenport does not specify when she applied for this assignment.
[6] Davenport does not specify when she applied for this position.

bother, you're not ready." Despite Blackiston's discouraging comments, Davenport applied. She alleges that despite being more qualified and having tested higher than all the other officers who applied for the position, she did not obtain an interview. When Davenport met with Blackiston to ask him why she did not obtain an interview, he said, "I told you, you weren't ready."

On September 30, 2010, Blackiston sexually assaulted Davenport on the premises of EPRU. On that date, Davenport was working in the control room when another corrections officer asked that she process Blackiston through security. After walking through the scanner, Blackiston pushed Davenport against a table and grabbed her groin. Davenport immediately screamed and attempted to push Blackiston away. Due to Blackiston's large size, however, she was unable to free herself from his grasp. Blackiston groped her groin for approximately twelve seconds.

In October 2010, Davenport filed a formal complaint of discrimination with the Equal Employment Opportunity (EEO) Division of the DPSCS. Along with the complaint, Davenport submitted a letter that detailed her interactions with Blackiston, Sutton, and Hancock. (Pl.'s Opp'n Defs.' Mot. to Dismiss ["Opp'n"] Ex. 1, ECF No. 45-2). On November 4, 2010,

Blackiston was transferred out of EPRU.   On that same date, Davenport alleges gunshots were fired at or near her residence.

On December 20, 2010, Davenport filed a formal Charge of Discrimination with the Baltimore field office of the United States Equal Employment Opportunity Commission ("EEOC") and the Maryland Commission on Human Relations.   (Opp'n Ex. 5, ECF No. 45-6).   On January 4, 2011, Davenport returned to work at EPRU.[7] When she attempted to clock-in, she discovered a threatening note on the back of her time card.

In October 2011, Blackiston pled guilty to two counts of second-degree assault of two female coworkers and was given a suspended sentence of one year by the Circuit Court of Queen Anne's County, Maryland.   Blackiston entered an Alford plea, agreeing to a statement of facts that described his sexual assault of a contractual medical employee in May 2010.   The statement also included an admission that on September 30, 2010, Blackiston pressed his body against Davenport and grabbed her groin.

On March 1, 2012, Davenport resigned from her position at EPRU.   On January 29, 2013, she received a letter from the Baltimore EEOC dismissing her discrimination charge.   (Opp'n Ex. 6, ECF No. 45-7).

---

[7] It is unclear from the Amended Complaint when Davenport left work.

Davenport filed the present action on April 26, 2013. (ECF No. 1). In her fifteen-count Amended Complaint, she alleges: battery (Count I); hostile work environment (Count II), quid pro quo sexual harassment (Count III), disparate treatment and disparate impact discrimination (Count IV), retaliation under Title VII (Count V); unlawful employment practices (Count VI); retaliation under FEPA (Count VII); conspiracy to deprive her of equal protection of the law (Count VIII); wrongful discharge (Count IX); gross negligence (Count X); general negligence (Count XI); intentional infliction of emotional distress (Count XII); civil conspiracy (Count XIII); negligent hiring and retention (Count XIV); and negligent training and supervision (Count XV). Davenport sues all individually named Defendants in their individual and official capacities. She seeks $1,000,000 in compensatory damages and $2,000,000 in punitive damages.

The Defendants now move to dismiss each claim, with the exception of Count I, for lack of subject matter jurisdiction and/or for failure to state a claim upon which relief may be granted. Davenport opposes the Motions with respect to Counts II-VII.[8] (ECF Nos. 45 & 46).

---

[8] Although Davenport does not oppose Defendants' Motion with respect to Counts VIII-XV, the Court will address whether she states a claim for these Counts. See Pisani v. Balt. City Police, No. CIV. WDQ-12-1654, 2013 WL 4176956 (D.Md. Aug. 14, 2013) (addressing an unopposed motion to dismiss in an employment discrimination case).

## II.  DISCUSSION

### A.   <u>Standard of Review</u>

A motion to dismiss for lack of subject matter jurisdiction is governed by Federal Rule of Civil Procedure 12(b)(1).  The plaintiff bears the burden of proving that subject matter jurisdiction properly exists in the federal court.  <u>See</u> <u>Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.</u>, 166 F.3d 642, 647 (4th Cir. 1999).  In determining whether subject matter jurisdiction exists, the court may consider evidence outside the pleadings without converting the motion to one for summary judgment.  <u>Richmond, Fredericksburg & Potomac R.R. Co. v. U.S.</u>, 945 F.2d 765, 768 (4th Cir. 1991) (citing <u>Adams v. Bain</u>, 697 F.2d 1213, 1219 (4th Cir. 1982)).  The court should grant a Rule 12(b)(1) motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law."  <u>Id.</u> (citing <u>Trentacosta v. Frontier Pac. Aircraft Indus.</u>, 813 F.2d 1553, 1558 (9th Cir. 1987)).

Conversely, a motion to dismiss for failure to state a claim is governed by Rule 12(b)(6).  The purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.  <u>Edwards v. City of Goldsboro</u>, 178 F.3d 231, 243 (4th Cir. 1999) (quoting <u>Republican Party v. Martin</u>, 980 F.2d 943, 952 (4th Cir. 1992)).

To survive a Rule 12(b)(6) motion, the complaint must allege facts that, when accepted as true, "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted). A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). Legal conclusions or conclusory statements do not suffice and are not entitled to the assumption of truth. Id. (citing Twombly, 550 U.S. at 555). Thus, the Court "must determine whether it is plausible that the factual allegations in the complaint are enough to raise a right to relief above the speculative level." Monroe v. City of Charlottesville, 579 F.3d 380, 386 (4th Cir. 2009) (quoting Andrew v. Clark, 561 F.3d 261, 266 (4th Cir. 2009)) (internal quotation marks omitted).

In determining whether to dismiss pursuant to Rule 12(b)(6), the Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Lambeth v. Bd. of Comm'rs of Davidson Cnty., 407 F.3d 266, 268 (4th Cir. 2005).

B.   **Analysis**

1.   **Claims against the State**

   a.   **Title VII**

      i.   **Hostile Work Environment (Count II)**

Defendants argue Davenport's Hostile Work Environment claim fails because it relies on factual allegations that were not timely filed with the EEOC or, alternatively, because she does not allege conduct sufficiently severe or pervasive to state a claim.  The Court disagrees.

Davenport alleges she was subjected to sexual harassment by Sutton, Hancock, and Blackiston, and that the harassment commenced on June 30, 2006, her first day of employment at EPRU. In Maryland, a Title VII plaintiff must file an administrative charge of discrimination with the EEOC within 300 days of the alleged unlawful employment practice.   42 U.S.C. § 2000e-5(e)(1); Tinsley v. First Union Nat'l Bank, 155 F.3d 435, 439 (4th Cir. 1998).  "[A]lleged discriminatory acts which occurred more than 300 days prior to the filing of the EEOC charge may not be subsequently challenged in a Title VII suit."  Mezu v. Morgan State Univ., 264 F.Supp.2d 292, 294 (D.Md. 2003) (citing Van Slyke v. Northrop Grumman Corp., 115 F.Supp.2d 587, 592 (D.Md. 2000)), aff'd sub nom. Mezu v. Dolan, 75 F.App'x 910 (4th Cir. 2003).

Under the continuing violation doctrine, however, a hostile work environment claim may include incidents occurring prior to the limitations period if Davenport can show some act contributing to the claim occurred within the limitations period and was a continuing part of the discriminatory activity that began prior to the limitations period. See Gilliam v. S.C. Dep't of Juvenile Justice, 474 F.3d 134, 140 (4th Cir. 2007) (explaining the same). In reviewing a decision from the United States Court of Appeals for the Ninth Circuit, the United States Supreme Court agreed that where the "pre- and post-limitations period incidents involve[d] the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers" many of the acts that occurred outside the limitations period were part of the same actionable hostile environment claim. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 120 (2002) (alteration in the original).

Here the 300-day limitations period includes the period from February 23, 2010 to December 20, 2010 (the date Davenport filed her charge of discrimination with the Maryland Commission on Human Relations and the EEOC). Davenport specifically alleges she was sexually assaulted by Blackiston within the limitations period, and generally alleges she was subjected to inappropriate sexual suggestions and comments from Hancock and Sutton "several times a week, often [two] to [three] times per

day, throughout [her] employment at EPRU." (Am. Compl. ¶ 107).
Davenport's allegations with respect to Hancock and Sutton are
flawed in two respects.

First, although the allegations of sexual harassment
occurred relatively frequently and are related to Blackiston's
sexual assault, they were not perpetrated by the same managers.
Second, the allegations are not pled with sufficient specificity
to survive a Motion to Dismiss.[9]  Thus, in considering whether
Davenport alleges conduct sufficiently severe or pervasive to
state a hostile work environment claim, the Court will consider
only Blackiston's sexual assault.

Nevertheless, the Fourth Circuit has recently concluded
that an allegation of a sexual assault by a coworker was
"sufficiently severe or pervasive to survive review at the
pleading stage." Davis v. City of Charlottesville Sch. Bd., 498
F.App'x 231, 233 (4th Cir. 2012).  Accordingly, the Court
concludes that Davenport has sufficiently stated a plausible
claim for relief as to Blackiston only, and will deny
Defendants' Motion with respect to Count II.  The Court will,

---

[9] The United States Court of Appeals for the Fourth Circuit
has held that "conclusory statements, without specific
evidentiary support, cannot support an actionable claim for
harassment," E.E.O.C. v. Xerxes Corp., 639 F.3d 658, 676 (4th
Cir. 2011) (quoting Causey v. Balog, 162 F.3d 795, 802 (4th Cir.
1998)) (internal quotation marks omitted), and that allegations
"unsubstantiated by accounts of specific dates, times or
circumstances," are too "general" to suffice, id. (quoting
Carter v. Ball, 33 F.3d 450, 461–62 (4th Cir. 1994)).

however, dismiss the allegation with respect to Hancock and Sutton.

### ii.  Quid Pro Quo (Count III)

Next, Defendants argue Davenport failed to exhaust administrative remedies with respect to her Quid Pro Quo Sexual Harassment claim.  The Court agrees.

Before a plaintiff has standing to file suit under Title VII, she must exhaust her administrative remedies by filing a charge with the EEOC.  Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 132 (4th Cir. 2002).  The allegations in an EEOC charge are critical because they define the scope of a plaintiff's right to institute a civil suit.  Id.  Only those discrimination claims stated in the initial charge, those reasonably related to the initial charge, and those developed by reasonable investigation of the initial charge may be maintained in a subsequent Title VII lawsuit.  Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996) (citing King v. Seaboard Coast Line R.R., 538 F.2d 581, 583 (4th Cir. 1976)).  When a plaintiff's complaint exceeds this scope, the plaintiff has failed to exhaust her administrative remedies and the Court must dismiss the complaint.  See Bryant, 288 F.3d at 133; Sloop v. Mem'l Mission Hosp., Inc., 198 F.3d 147, 149 (4th Cir. 1999).

"[T]o establish quid pro quo liability, a plaintiff must prove that a 'tangible employment action resulted from a refusal

to submit to a supervisor's sexual demands.'" <u>Moser v. MCC</u> <u>Outdoor, L.L.C.</u>, 256 F.App'x 634, 642 (4th Cir. 2007) (quoting <u>Burlington Indus., Inc. v. Ellerth</u>, 524 U.S. 742, 753 (1998)). While Davenport does allege sexual harassment in her EEOC charge, she does not allege quid pro quo sexual harassment. (<u>See</u> Opp'n Ex. 5, at 9). Further, because quid pro quo requires proof of an element that hostile work environment does not (i.e. quid pro quo), a quid pro quo claim is not reasonably related to and does not reasonably follow from an investigation of a charge of hostile work environment. <u>See</u> <u>Porch v. American K-9</u> <u>Interdiction, LLC</u>, No. 2:12CV690, 2013 WL 4804285, at *7 (E.D.Va. Sept. 6, 2013); <u>Bolt v. Norfolk Southern Corp.</u>, 22 F.Supp.2d 512, 517 (E.D.Va. 1997).

Accordingly, the Court will dismiss Count III.

### iii. Disparate Treatment and Disparate Impact Discrimination (Count IV)[10]

Defendants argue Davenport also failed to exhaust administrative remedies with respect to her claim for Disparate Impact/Treatment or, alternatively, she has failed to state a claim. The Court finds that Davenport did exhaust administrative remedies with respect to a claim for disparate

---

[10] Davenport does not specify whether she is bringing a claim for disparate impact or disparate treatment discrimination. The Court will assume Davenport intended to plead a claim for both causes of action.

treatment, but failed to sufficiently allege an adverse employment action, which is necessary to state a claim.

As discussed above, "the relevant test in determining whether [Davenport] was required to exhaust her administrative remedies . . . is whether the acts alleged in the subsequent Title VII suit are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." Waiters v. Parsons, 729 F.2d 233, 237 (3d Cir. 1984). "Title VII prohibits both intentional discrimination (known as 'disparate treatment') as well as, in some cases, practices that are not intended to discriminate but in fact have a disproportionately adverse effect on minorities (known as 'disparate impact')." Ricci v. DeStefano, 557 U.S. 557, 577 (2009).

Here, Davenport unquestionably alleges sex discrimination in her EEOC charge, but does not specifically allege either disparate treatment or disparate impact. While a claim of disparate impact requires that a plaintiff identify an specific employment policy or practice that allegedly produces a disparate impact, a disparate treatment claim is a more general cause of action that "occur[s] where an employer has 'treated [a] particular person less favorably than others because of' a protected trait." Ricci, 557 U.S. at 577 (quoting Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 985–86 (1988)). Although Davenport's EEOC charge does not directly refer to disparate

14

treatment, the claim is fairly within the scope of her allegation of sex discrimination because both claims arise from the same alleged sexual harassment she suffered at the hands of Blackiston, Sutton, and Hancock.   The EEOC, therefore, had an opportunity to investigate Davenport's allegations that she was treated less favorably than others based on her sex.

Notwithstanding the Court's acceptance of Davenport's disparate treatment claim, she fails to properly allege that she was subjected to an adverse employment action.   To sufficiently allege disparate treatment, a plaintiff must plead, inter alia, that she was subjected to an adverse employment action.   Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd sub nom. Coleman v. Ct. of Appeals of Md., 132 S.Ct. 1327 (2012).   "An adverse employment action is a discriminatory act that adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment."   Holland v. Wash. Homes, Inc., 487 F.3d 208, 219 (4th Cir. 2007) (alteration in the original) (quoting James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 375 (4th Cir. 2004)) (internal quotation marks omitted).   There can be no adverse employment action where an employee's terms, conditions, and benefits of employment remain the same.   See James, 368 F.3d at 376-77.

Davenport makes two allegations of specific discriminatory conduct.   First, she alleges when she applied for a promotion to

15

the rank of sergeant, she did not receive an interview despite the fact that she "was more qualified and tested higher than any other officers who had applied for the position." (Am. Compl. ¶ 111). She further alleges "other officers, who were less qualified and had tested lower than Plaintiff, received letters for oral interviews." (Id.).

Second, Davenport alleges she asked MacKenzie to work as part of the "Road Crew detail," but her request was denied and MacKenzie gave the position to a male officer who had less years of experience. (Am. Compl. ¶ 121). Because this conduct did not adversely affect the terms, conditions, or benefits of her employment, Davenport has failed to properly allege that she was subject to an adverse employment action. Accordingly, the Court will grant Defendants' Motion with respect to Count IV.

### iv. Retaliation (Count V)

Defendants argue Davenport's retaliation claim under Title VII fails to allege facts sufficient to state a claim. The Court agrees.

Title VII prohibits discrimination against an employee in retaliation for the employee's opposing the employer's illegal discrimination practices or participating in Title VII enforcement proceedings. 42 U.S.C. § 2000e-3(a). To properly plead retaliation, Davenport must allege "(1) that she engaged in protected activity, (2) that an adverse employment action was

taken against her, and (3) that there was a causal link between the protected activity and the adverse employment action." Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 258 (4th Cir. 1998).

The adverse action element of a retaliation claim is different from that of a disparate treatment claim. A Title VII plaintiff claiming retaliation need only allege that she suffered an action that was "materially adverse," meaning that the action "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (quoting Rochon v. Gonzales, 438 F.3d 1211, 1219 (D.C.Cir. 2006)) (internal quotation marks omitted). The retaliation Davenport alleges to be adverse employment actions include gun shots fired at or near her residence one month after filing her EEOC charge and an anonymous, threatening note on the back of her time card two weeks after filing her EEOC charge. Even assuming these acts constitute adverse employment actions, Davenport cannot establish that her co-workers retaliated against her for asserting her Title VII rights because she cannot identify the person or persons who committed these retaliatory acts. See Caldwell v. Jackson, No. 1:03CV707, 2009 WL 2487850, at *9 (M.D.N.C. Aug. 11, 2009) ("[Defendant] cannot make out a prima facie case of retaliation based on acts by anonymous persons."),

17

report and recommendation adopted, 831 F.Supp.2d 911 (M.D.N.C. 2010); see also Ziskie v. Mineta, 547 F.3d 220, 229 (4th Cir. 2008) (finding that the plaintiff could not show that the retaliation was causally related to her complaint of discrimination because she could not identify who committed the retaliatory acts).

Accordingly, the Court concludes that Davenport has failed to sufficiently state a plausible claim for relief under Title VII, and will grant Defendants' Motion with respect to Count V. Also, because "FEPA is the state law analogue of Title VII and its interpretation is guided by federal cases interpreting Title VII," Finkle v. Howard Cnty., No. CIV. JKB-13-3236, 2014 WL 1396386, at *3 (D.Md. Apr. 10, 2014) (citing Haas v. Lockheed Martin Corp., 914 A.2d 735, 742 (Md. 2007)), the Court will dismiss the FEPA retaliation claim (Count VII).

### b.   FEPA - Unlawful Employment Practices (Count VI)

The State challenges Davenport's FEPA claim for unlawful employment practices on three bases: (1) the State has not waived its sovereign immunity with regard to claims arising under § 20-606 in federal court; (2) Davenport did not file the instant action within FEPA's statutory limitations period; and (3) Davenport fails to state a claim.   The Court will address each of these arguments in turn.

18

### i.   The State is not immune from FEPA suits in federal court

Under the Eleventh Amendment to the United States Constitution, a state, its agencies, and departments are immune from suits in federal court brought by its citizens or the citizens of another state, unless it consents.  See Penhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984).  "The test for determining whether a State has waived its immunity from federal-court jurisdiction is a stringent one."  Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 241 (1985).[11]  Under this stringent test, a state will be deemed to have waived its immunity "only where stated by the most express language or by such overwhelming implication from the text as will leave no room for any other reasonable construction."  Id. at 240 (quoting Edelman v. Jordan, 415 U.S. 651, 673 (1974)) (internal quotation marks and alteration omitted).

The State's waiver of sovereign immunity in employment discrimination cases appears in Section 20-903 of the State Government Article of the Maryland Code.  This provision provides that "[t]he State, its officers, and its units may not raise sovereign immunity as a defense against an award in an

---

[11]  The specific holdings of Atascadero State Hospital and Garcia have been overruled by subsequent legislation.  See 42 U.S.C. § 2000d-7 (West Supp.).  However, the analysis relied upon here is unchanged.

employment discrimination case under this title." Md. Code
Ann., State Gov't § 20-903 (West 2014). This Court has recently
held that Maryland's waiver of sovereign immunity in Section 20-
903 applies in both state and federal court. See Hartman v.
Univ. of Md. at Balt., No. ELH-10-2041, 2013 WL 6858854, at *4
(D.Md. Dec. 20, 2013). The same analysis applies here.
Accordingly, the State is not immune from Davenport's FEPA
claims.

Conversely, however, while Maryland has also waived its
sovereign immunity in state court for certain tortious actions
of state personnel, Md. Code Ann., State Gov't § 12-104, it has
not consented to tort suits in federal court, id. § 12-103(2).
See also Weller v. Dep't of Soc. Servs. for City of Balt., 901
F.2d 387, 397 (4th Cir. 1990) ("The waiver of sovereign immunity
in the Maryland Torts Claims Act clearly limits the state's
waiver of immunity to actions brought in the Maryland state
courts." (citing Smith v. Bernier, 701 F.Supp. 1171
(D.Md.1988))). Accordingly, the State is immune from the
various tort claims alleged in Counts IX-XV.[12]

---

[12] Counts IX-XV are alleged against the State and the
individually named Defendants in their official capacities. A
suit against a state officer in his official capacity is the
equivalent to a suit against the state itself. See Brandon v.
Holt, 469 U.S. 464, 471-72 (1985). Thus, the claims against the
individually named Defendants in their official capacities must
also be dismissed.

### ii.   The statute of limitations does not bar this claim

Defendants contend that because all of Davenport's allegations concern acts and incidents occurring more than two years prior to April 26, 2013, Davenport's FEPA claim for unlawful employment practices is barred.  The Court disagrees.

Section 20-1013 of the State Government Article of the Maryland Code requires that a civil action alleging "an unlawful employment practice" be filed "within 2 years after the alleged unlawful employment practice occurred."  Md. Code Ann., State Gov't § 20-1013(a)(3).  Davenport commenced this action on April 26, 2013.  (See ECF No. 1).

She alleges Defendants created a hostile and unsafe work environment through her last day of employment on March 1, 2012 in retaliation for her filing an EEOC charge.  Because March 1, 2012 is within the limitations period, the Court concludes Section 20-1013 does not bar Davenport's claim.

---

Further, Counts X and XI allege the Defendants breached a professional duty of care only owed by the Defendants in their official capacities: "a duty of reasonable care to . . . not create or maintain a dangerous condition." (Am. Compl. ¶¶ 273, 279).  Even if Counts X and XI were not barred by the Eleventh Amendment against the individually named Defendants in their official capacities, these Counts must be dismissed because "under [Maryland's] workmen's compensation scheme as well as under the common law, the supervisory employee should not be held liable for breaching a duty such as providing a safe place to work." Athas v. Hill, 476 A.2d 710, 718 (Md. 1984).

### iii. Davenport states a FEPA claim for unlawful employment practices

Based on the Court's Title VII analysis articulated above, Davenport properly pleads a hostile work environment claim. Because a hostile work environment is an example of an "unlawful employment practice" under Title VII, see Jordan v. Alternative Res. Corp., 458 F.3d 332, 339 (4th Cir. 2006), and FEPA analysis is guided by federal case law interpreting Title VII, the Court will deny Defendants' Motion with respect to Count VI.

### 2. Claims against all Defendants

#### a. 42 USC § 1985 (Count VIII)

Defendants argue Davenport fails to state a claim for a violation of 42 U.S.C. § 1985 because she only alleges a conspiracy in a bare and conclusory manner and a conspiracy to violate a plaintiff's Title VII rights cannot form the basis of a Section 1985 conspiracy claim. The Court agrees.

Federal law authorizes a cause of action if "two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . ." 42 U.S.C. § 1985(3) (2012). In order to establish a sufficient cause of action under Section 1985(3), a plaintiff must prove:

> (1) a conspiracy of two or more persons, (2)
> who are motivated by a specific class-based,
> invidiously discriminatory animus to (3)
> deprive the plaintiff of the equal enjoyment
> of rights secured by the law to all, (4) and
> which results in injury to the plaintiff as
> (5) a consequence of an overt act committed
> by the defendants in connection with the
> conspiracy.

Simmons v. Poe, 47 F.3d 1370, 1376 (4th Cir. 1995) (citing

Buschi v. Kirven, 775 F.2d 1240, 1257 (4th Cir. 1985)).

To survive a motion to dismiss, plaintiffs alleging conspiracy under Section 1985(3) must "plead specific facts in a nonconclusory fashion." Gooden v. Howard Cnty., Md., 954 F.2d 960, 970 (4th Cir. 1992). Here, Davenport fails to satisfy that requirement because she has made only bare, conclusory allegations without alleging any facts from which this Court can draw a reasonable inference that such a conspiracy occurred.

Additionally, the essence of Davenport's Amended Complaint is employment discrimination. To the extent Count VIII is premised upon an alleged conspiracy to violate Davenport's Title VII rights, her claim is foreclosed by the Supreme Court's decision in Great American Federal Savings & Loan Association v. Novotny, 442 U.S. 366 (1979). In Novotny, the Court held that "deprivation of a right created by Title VII cannot be the basis for a cause of action under § 1985(3)." 442 U.S. at 378; see Bradley v. Balt. Police Dep't, 887 F.Supp.2d 642, 648 (D.Md. 2012) (dismissing the plaintiff's § 1985(3) claim for failure to

23

state a claim where the essence of the complaint was employment discrimination).

Accordingly, Davenport's allegations are insufficient to state a claim under Section 1985(3), and the Court will dismiss Count VIII.

### b.    Tort Claims (Counts IX-XV)

#### i.    Individually Named Defendants in their Individual Capacities

##### a.    Intentional Infliction of Emotional Distress (Count XII)

Defendants argue Count XII, Intentional Infliction of Emotion Distress ("IIED"), fails to allege the "truly outrageous" and "atrocious" conduct required under the strict standard imposed by Maryland law.  The Court does not reach the issue, however, because it finds that Davenport has failed to allege a severely disabling emotional response sufficient to reach the high burden imposed by the requirement that her emotional distress be severe.

To state a claim for IIED, a plaintiff must allege four elements: (1) intentional or reckless conduct; (2) extreme and outrageous conduct; (3) a causal connection between the wrongful conduct and the emotional distress; and (4) severe emotional distress.  Harris v. Jones, 380 A.2d 611, 614 (Md. 1977); Arbabi v. Fred Meyers, Inc., 205 F.Supp.2d 462, 465-66 (D.Md. 2002). In Maryland, IIED claims are "rarely viable" and, thus, subject

24

to a heightened pleading standard.  Bagwell v. Peninsula Reg'l Med. Ctr., 665 A.2d 297, 319 (Md.Ct.Spec.App. 1995).  Each of the four elements of an IIED claim must "be pled . . . with specificity."  Foor v. Juvenile Servs. Admin., 552 A.2d 947, 959 (Md.Ct.Spec.App. 1989).

The requirement that a plaintiff's emotional distress be severe imposes a "high burden."  See Manikhi v. Mass Transit Admin., 758 A.2d 95, 114-15 (Md. 2000) (collecting cases).  "In order for distress to be sufficiently severe to state a claim for IIED, the plaintiff must show that [she] suffered a severely disabling emotional response to the defendant's conduct, and that the distress was so severe that no reasonable man could be expected to endure it."  Solis v. Prince George's Cnty., 153 F.Supp.2d 793, 804 (D.Md. 2001) (quoting Thacker v. City of Hyattsville, 762 A.2d 172, 197 (Md.Ct.Spec.App. 2000)) (internal quotation marks omitted).

Here, Davenport alleges that after the sexual assault, she "feared for her safety," (Am. Compl. ¶ 163), and was "afraid to return to work," (id. ¶ 170).  She does not allege that her emotional distress interfered with normal activities outside of work.  Additionally, Davenport alleges that she has "suffer[ed] and continues to suffer . . . mental pain and suffering, including but not limited to, undue emotional distress, mental anguish, humiliation, embarrassment, loss of respect, shame,

[and] loss of enjoyment of life." (Id. ¶ 292). Because Davenport neither alleges that her emotional distress interferes with her normal activities outside of work nor provides sufficiently specific details concerning the nature, intensity, or duration of her emotional distress, she fails to properly allege IIED. See Solis, 153 F.Supp.2d at 804 (dismissing the plaintiff's complaint where although the plaintiff could not return to work, there was no evidence his emotional distress interfered with his normal life activities outside work); Manikhi, 758 A.2d at 115 (affirming the dismissal of the plaintiff's IIED claim where the complaint did not "state with reasonable certainty the nature, intensity or duration of the alleged emotional injury.").

Accordingly the Court will dismiss Count XII.

### b.   Civil Conspiracy (Count XIII)

Finally, Defendants argue Davenport fails to state a claim for civil conspiracy because Maryland does not recognize the independent tort of civil conspiracy. The Court agrees.

Maryland courts define tortious civil conspiracy as "a combination of two or more persons by an agreement or understanding to accomplish an unlawful act or to use unlawful means to accomplish an act not in itself illegal, with the further requirement that the act or the means employed must result in damages to the plaintiff." Hoffman v. Stamper, 867

A.2d 276, 290 (Md. 2005) (quoting <u>Green v. Wash. Sub. San.</u> <u>Comm'n</u>, 269 A.2d 815, 824 (Md. 1970)) (internal quotation marks omitted).   Maryland does not recognize an independent cause of action for civil conspiracy.   <u>Clark v. Md. Dep't of Pub. Safety</u> <u>& Corr. Servs.</u>, 247 F.Supp.2d 773, 777 (D.Md. 2003) (citing <u>Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.</u>, 665 A.2d 1038, 1044-45 (Md. 1995)).   Rather, a "defendant's liability for civil conspiracy depends entirely on its liability for a substantive tort."   <u>Id.</u> (quoting <u>Fare Deals, Ltd. v. World</u> <u>Choice Travel.Com, Inc.</u>, 180 F.Supp.2d 678, 692 (D.Md. 2001)) (internal quotation marks omitted).   Therefore, because Davenport has failed to state a claim for any substantive torts, her claim for civil conspiracy must be dismissed.

### III. CONCLUSION

For the foregoing reasons, the Court will, by separate Order, grant in part and deny in part Defendants' Motion to Dismiss.   (ECF Nos. 37 & 38).   The Court will grant Defendants' Motion with respect to Counts III-V and VII-XV, but will deny it with respect to Counts II and VI.

Entered this 6th day of August, 2014

/s/

_____

George L. Russell, III
United States District Judge